See, also, upon this point, *Mayor of Hull* v. *Horner*, Cowp. 110, decided by Lord MANSFIELD.

These considerations lead to the conclusions—*First*, that the lapse of time constitutes a good defense to this suit, upon the general principles of equity above stated, and which would be administered as between two citizens litigating in this tribunal; and, *second*, that the United States is bound by the same law.

These conclusions render it unnecessary to consider the other important questions discussed by counsel.

The court, however, deems it proper to say, in view of some remarks of the counsel for respondents, that, in its opinion, the official action of the attorney general in directing that the bill be filed, cannot properly be made the subject of adverse criticism. The bill was filed upon the recommendation of the secretary of the interior, for the declared purpose of having the questions which were being pressed upon the attention of the land department in connection with the claims of the Philbrook heirs, determined by the judicial department of the government. Those questions are important and unsettled. An appeal to the courts was, therefore, entirely proper.

The demurrer to the bill is sustained; and, unless the complainant asks leave to amend, there will be a decree for respondents, dismissing the bill.

CALDWELL, J., being interested, took no part in this case.

See *Speidell* v. *Henrici*, 15 FED. REP. 753, and note, 758.

---

ADAMS, Trustee, and another, Assignee, *v.* CRITTENDEN and others.[1]

*(Circuit Court, N. D. Alabama. 1881.)*

1. INJUNCTION.
    It is neither regular nor proper to issue a perpetual injunction, at the first hearing of a cause, where no evidence was taken or considered, and an injunction so issued will be considered as temporary only.

2. JURISDICTION IN BANKRUPTCY.
    After the property of a bankrupt has been sold and the proceeds received, and neither the court, nor the assignee, nor the creditors have any further interest in it, the court will not interfere, at the instance of the purchaser, to prevent, by injunction, parties from asserting any claims they may have, or pretend to have, against the property in any of the courts of the several states; and this, notwithstanding no final distribution has been made in the bankruptcy. The bankrupt court will not interfere where no advantage can result to the bankrupt's estate.
    *Hewitt* v. *Norton*, 1 Woods, 71, *distinguished.*

In Equity.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

*O'Neal & O'Neal,* for complainants.

*D. P. Lewis* and *J. B. Moore,* for defendants.

PARDEE, J.   The petition in this case was filed in the district court to enjoin the defendants Crittenden and Weaver from further prosecuting or enforcing their suits or claims against certain lands in the state chancery court for the second district of the northern chancery division of Alabama, and to enjoin the defendant Andrews, register of aforesaid chancery court, from advertising and selling said lands under order of said chancery court.   The petition, which is lengthy, sets out in substance that the lands described formed part of the assets belonging to one Weaver, who had been compelled by the judgment of the district court to make a surrender in bankruptcy, and so, after certain litigation, passed into the hands of Harris, assignee of said Weaver, with certain real and fictitious liens upon them, who, under a proper order and decree of the district court, sold and conveyed them to Adams, plaintiff; that after the sale made in bankruptcy the defendants Crittenden and Weaver, claiming to have vendors' liens upon the land in question, are seeking to enforce them against the property in the state chancery court, and have prosecuted their claims to judgment, and are about to cause the lands to be sold under the decree obtained.   The state court is alleged to be wholly without jurisdiction, by reason of the provisions of the bankrupt law of the United States; and the defendants are alleged to be violating the jurisdiction of the district court of the United States; and that the proceedings will damage plaintiffs by throwing a cloud on their title.   The record shows that the sale made by the assignee in bankruptcy has been completed and ratified by the court, and the proceeds thereof received by the assignee; that a final discharge has been granted the bankrupt, but no final distribution has been made, and to that extent the bankruptcy proceedings may be considered as still pending.

It further appears that the prayer of the petition was for an injunction to issue, and that, upon the hearing, the injunction should be made perpetual.   The petition was filed on the twelfth day of April, 1879.   On the fourth day of May following, defendant Crittenden filed demurrer and answer.   On the fifth day of May, defendant Weaver filed demurrer and answer; and on the same day the district judge made this order:

"This cause having come on to be heard, and after argument by counsel and consideration by the court, it is ordered, adjudged, and decreed that the clerk of this court issue the writ of injunction in accordance with the prayer of the petition aforesaid."

Thereupon, May 7, 1879, the clerk issued an injunction containing an order for the defendants to show cause at the next term of the court why the same should not be made absolute, which was served. November 4, 1879, the defendants filed, on many grounds, a motion to dismiss the petition and dissolve the injunction.   Afterwards, on

the sixteenth of December, the motion to dissolve was heard and denied by the judge. Finally, on February 24, 1881, the district court rendered a judgment, finding for the defendants, and decreeing "that the petition for injunction or restraining order be denied and the same is dismissed, and the temporary injunction heretofore granted by the court upon the petition is hereby dissolved;" and from this judgment the plaintiffs have appealed to this court.

The first question in proper order presented in this court, necessary to pass upon, is whether the injunction granted May 5, 1879, was or not a temporary injunction, or whether the order or judgment rendered that day was not final on its merits, ordering and perpetuating the injunction in the same decree. In the record there is no notice to defendants for application for injunction, though, as they appeared and filed demurrers and answers, they must have had notice. Nor in the record, until the day of the final decree, is there anything to show but the plaintiffs had always taken and treated the injunction as temporary.

So that it may be considered that up to the final decree all the parties, and the judge himself, held and treated the first injunction as temporary only. The terms of the injunction are to that purport. At the first hearing it does not appear that any evidence was taken or considered. It was neither regular nor proper to have issued a perpetual injunction at that stage of the case. That no bond was required proves nothing, as that was, considering the injunction as a restraining order merely, within the discretion of the court.

Under these circumstances, I do not well see how this court can declare that a perpetual injunction which was neither so in terms nor in intention.

The only remaining question of the many raised and ably argued, necessary to decide, is whether the district court of the United States sitting in bankruptcy, and undoubtedly having exclusive jurisdiction against the state courts over all questions relating to the ascertainment and liquidation of the liens and specific claims bearing on the bankrupt's assets, and extending to all acts, matters, and things to be done under and in virtue of the bankruptcy until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy, will, after property of the court bankrupt has been sold and the proceeds received, and neither the court nor the assignee nor creditors have any further interest in it, interfere at the instance of the purchaser to prevent, by injunction, parties, strangers to the bankruptcy, from asserting any claims they may have, or pretend to have, against the property, in any of the courts of the several states, and this, notwithstanding no final distribution has been made in the bankruptcy.

It would seem that this question as stated would suggest its own answer. Because one court has exclusive jurisdiction of a matter, it

does not follow that it will enjoin parties from proceeding or attempting to proceed in some other form. There can be no question that the United States district courts have exclusive original jurisdiction in admiralty; but those courts do not issue injunctions to hinder the state courts from infringing on their jurisdiction. There is a remedy in another direction, and the same remedy, it seems to me, can be, unless lost by delay, resorted to by the parties in this case.

The reasoning of Judge HILL, in the case of *Penny* v. *Taylor*, 10 N. B. R. 200, is applicable in full force to this case. The rights of the parties, under the laws of the United States and the decrees of the district court of this district, are well ascertained and determined, and every court in the country is bound to, and, it is presumed, will, maintain them. If not maintaining them to the satisfaction of the parties, the remedy would lie, not by an injunction from another court, but by appeal to the proper superior court, and, finally, to the supreme court of the United States, if justice were not sooner done in the premises.

If the property in controversy were in anywise under control of the bankrupt court, or in anywise affected the bankrupt estate, it would be decidedly different. But the bankrupt court is not for all time, or any time, a warranty of title to property sold, disposed of, and paid for under its orders.

The case of *Hewitt* v. *Norton*, 1 Woods, 71, was a case where the property was in the hands of the assignee. No other conclusion can be arrived at from an examination of the whole case.

The authorities quoted in Bump, Bankr. (9th Ed.) 177, note 4, to the effect that the bankrupt court will not interfere where no advantage can result to the bankrupt's estate, gives, in my judgment, the proper rule to follow in cases like the one under consideration.

The argument that unless the bankrupt court protects property after it has passed out of the bankruptcy the power of the court and the efficiency of the law will be impaired, if not brought into contempt, is not very forcible. The jurisdiction of the courts of the United States, under the laws of the United States, is well grounded, and, wherever necessary, will be vindicated; and for that very reason it behooves the said courts and the judges thereof to exercise care and comity when called upon to interfere with the proceedings in state courts, which courts are presumed to know and apply all the laws of the country with learning and justice.

There is another view of this case which is equally against the plaintiff in this suit. The district court has no jurisdiction, exclusive or otherwise, to interfere, under the bankrupt law, except with such matters and things, liens and otherwise, as pertain to the assets of the bankrupt's estate. Now, when property of the bankrupt has been brought into the bankrupt court, sold under the decree of the court, the proceeds received by the assignee, and the sale ratified by the court, that property has ceased to be assets of the bank-

rupt, ceased to pertain to his estate, and ceased to be under control of the bankrupt court, just as much as it would have passed out of the jurisdiction of any other court that might have had judicial possession of it, and ordered and completed its sale.

Can it be pretended that an admiralty court, after having possession and control of a ship, and after selling it free and clear of all liens, as against all the world, can prevent parties with alleged liens pursuing the ship in the hands of the purchaser in any other courts; or that a probate court, having the exclusive control and jurisdiction of a minor's property, can protect it, after sale, from alleged mortgages and liens? It would seem immaterial whether the debts, which are the basis of the alleged liens claimed by defendants, were the debts of the bankrupt Weaver or not; but, in fact, they are not his debts, but the debts of strangers to the bankruptcy, and were not provable in said bankruptcy, although the liens might have been allowed therein. The views of this case as herein expressed, or others leading to the same conclusions, were undoubtedly entertained by the learned judge presiding in the district court who decided the case adversely to the pretensions of the plaintiff.

Let a decree be entered affirming the decree of the district court.